[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The question presented by this case is the appropriate amount of child support to be paid by the defendant, who has been permanently disabled by an industrial accident and who, also as a result of that accident, has recovered an amount approaching $1,000,000 from a tort action. This question is raised by the plaintiff's motion to modify an order of child support entered at the time of dissolution of the parties' marriage, as subsequently modified in April of 1995.
The marriage of the parties was dissolved on September 18, 1987. There are two minor children issue of the marriage, twins who are presently nine years old. The plaintiff is the custodial parent of these children, and at the time of the dissolution the court ordered child support to be paid by the defendant of $90 per week. Subsequently, on April 25, 1995 the court (Dranginis, J.) modified that order to require weekly child support payments of $100 over and above social security payments received by the children as a result of their father's disability. At the time of the dissolution the plaintiff waived her right to alimony.
Prior to the divorce the defendant suffered horrific injuries as a result of an accident at his place of employment on December 24, 1986. These injuries have left him totally disabled from engaging in any employment, and that condition will continue for the rest of his life. He brought a products liability action, as well as a worker's compensation claim, as a result of his injuries. The former has now been resolved by payments totalling $1,650,000, from which the defendant realized approximately $947,000. Of the amounts paid to the defendant, however, less than $100,000 remains in Connecticut, immediately available to the court for satisfaction of his child support obligation. Despite an order of the court on March 20, 1995 which sought to preserve any amounts recovered by the defendant until the plaintiff's earlier motion to modify child support was resolved, the bulk of his recovery, which was received in October 1995, was paid directly to his conservatrix, his mother, in Puerto Rico, where the defendant now resides.
Before resolving the issued raised by the plaintiff's motion to modify child support (#150), the court will address her motion to open and modify the judgment on the grounds that the defendant failed to disclose the full value of his claims for personal injuries at the time of the dissolution of the CT Page 3912 parties' marriage. As pointed out above, at that time both parties waived any claim for alimony and stated in a written agreement that they knew and understood that their failure to claim alimony at that time precluded them from coming back to court with a future claim for alimony "under any circumstances". The court heard evidence on this motion on January 22, 1996. That evidence and examination of the agreement persuades the court that the motion to open must be denied. While the plaintiff testified that she did not understand that the defendant had filed a law suit as well as a worker's compensation claim, the agreement which she signed September 18, 1987, and which had been drafted by her attorney, refers to those claims separately. The plaintiff testified that she read the agreement, and that her attorney reviewed it with her, including paragraph 3, the paragraph referring to the worker's compensation settlement and a civil action filed by the defendant. In view of those facts the court concludes that the plaintiff was sufficiently aware of the consequences of her actions, and that she voluntarily and knowingly waived her right to alimony at the time of the dissolution. The court did not hear any evidence indicating that the defendant had attempted to perpetrate a fraud either on the plaintiff or on the court.
The parties' separation agreement also provided that" the proceeds from any civil action filed by defendant husband relating to his injuries sustained on December 24, 1986 . . . are not to be considered as a substantial change of circumstances for the purposes of modifying the child support orders ". Nevertheless, on the authority of Guille v. Guille, 196 Conn. 260
(1985), the court concludes that it retains the right to modify the defendant's child support obligation to vindicate the minor children's independent right to parental support. The court (Dranginis, J.) which modified the support order in 1995 obviously found no obstacle in this provision of the parties' agreement, and no objection on this ground has been interposed by the defendant at this time.
In determining the amount of child support payable by the defendant, the court is directed by § 46b-84 (c) to consider several specific factors. Among those factors is the "estate" of the defendant, which in this case includes the very substantial sums he has recovered as a result of his injuries. In addition to the criteria in § 46b-84 (c), and not in lieu of them, the court must consider the child support guidelines promulgated pursuant to § 46b-215a in making its child support orders, and CT Page 3913 there is a rebuttable presumption that the amount to be ordered should be that amount resulting from an application of those guidelines. To deviate from those guidelines the court must make a finding on the record that their application would be inequitable or inappropriate in a particular case, as determined under "deviation criteria" established by the Commission for Child Support Guidelines. Section 46b-215b of the General Statutes.
Counsel for the defendant's Connecticut conservator provided to the court on January 22, 1996 a child support guidelines worksheet, indicating a guidelines recommended figure in the amount of $201 per week for both children. That amount was based on an "estate" of the defendant in the amount of $936,700, to which his counsel applied an interest rate of 5.52%, represented to be the current C.D. rate, thus producing an annual income of approximately $52,000 to the defendant. To the weekly equivalent of that figure ($994) counsel added the defendant's weekly social security payment based on his disability in order to arrive at a gross weekly income of $1,122. Applying some estimated tax figures to that amount, defendant's counsel concluded that his net weekly income could be estimated at $778. Using figures from a financial affidavit provided by the plaintiff on January 22, 1996, counsel computed a basic child support obligation from the guidelines schedule, and the defendant's relative portion of that would be $201, over and above the social security benefits payable to his minor children.
At the January 22 hearing the plaintiff testified without contradiction that her two children, a boy and a girl now nine years old, share a bedroom in her two-bedroom apartment. In addition, her son has been diagnosed with Attention Deficit Hyperactivity Disorder and requires regular medication for that disorder. To determine the full extent of the disorder he requires additional medical evaluation which she has been unable to afford. The son's disorder has already manifested itself in behavioral problems, and the plaintiff is also unable to afford counseling for her son.
In addition, the plaintiff, who works full-time, requires a car to travel to and from her employment, and her present vehicle is in extremely bad condition, requiring constant repairs. Her net weekly income from employment is $294, and she receives $49 weekly in social security payments for her children CT Page 3914 as a result of their father's disability. Thus, her total weekly income is $343. Her weekly expenses total $629, thus creating a weekly shortfall of $286. She has no assets other than her 10-year old car and minimal balances in her checking accounts.
The court finds that a substantial change in circumstances has occurred from the date of the last modification of child support in that the defendant has recovered an additional sum of $746,721 out of a settlement of $1.2 million. The court further finds that the failure of the defendant and his conservatrix in Puerto Rico to cooperate with the judicial process in Connecticut by providing timely and verifiable financial information has rendered the calculation of a guidelines support figure difficult if not impossible. The first financial affidavit provided by the defendant through his conservatrix was not signed and sworn to until January 26, 1996, several days after the hearing in this matter, despite the fact that the court (Dranginis, J.) had ordered the submission of a financial affidavit and verified expenses by the defendant in March of 1995. Moreover, neither the plaintiff nor the court can know whether or not the income figures contained on that affidavit or assumed on the guidelines worksheet provided by the defendant's counsel are an accurate reflection of what is being earned on the funds recovered by the defendant or what can be earned on those funds if invested in higher-return investment vehicles. For example, the financial affidavit of the defendant does not indicate the rate of return presently being experienced on the Connecticut funds or the Puerto Rico funds. Nor does the guidelines worksheet indicate the basis for the tax calculations contained thereon.
Mindful of the injunction of Favrow v. Vargas, 231 Conn. 1
(1994), the court finds that the minimum amount of support under the guidelines would be the $201 figure contained on the defendant's guidelines worksheet. The court hastens to add that the application of the guidelines to this case is inequitable and inappropriate and relies on the following specific deviation criteria:
1. Other financial resources available to the defendant in the form of substantial assets, per § 46b-215a-3 (b)(1) of the Child Support and Arrearage Guidelines Regulations;
2. Extraordinary education, medical and other expenses for CT Page 3915 the care and maintenance of the defendant's son, per § 46b-215a-3
(b)(2);
3. The best interest of the children and other equitable factors, per § 46b-215a-3 (b)(6)(E) and (F).
The plaintiff lives a very frugal lifestyle, and it is clear from the testimony that the actual cost of supporting her children in a manner which meets their best interests would be considerably in excess of her current weekly expenses. The court, however, has no evidence as to what those actual costs would be. Therefore, it is limited in making an award of child support. Based on the financial affidavits of the parties and the evidence adduced at the hearing on January 22, the court finds that weekly support of $285 over and above the social security payments is needed to maintain the children in their present circumstances, and that the defendant has the ability to provide that support, considering the factors of § 46b-84 (c) of the General statutes.
The defendant is permanently disabled from employment due to his injuries. Therefore, it is not possible for the court to secure compliance with his support obligation by way of a wage garnishment. Yet security is essential in this case. All but $100,000 of the defendant's almost $1,000,000 in recoveries from his law suit has gone directly to Puerto Rico and is, therefore, not available in Connecticut for the support of his children. Moreover, an examination of the file in this case demonstrates that it is replete with motions for contempt alleging failures to comply with the court's existing orders of child support. On November 28, 1994 the court (Pellegrino, J.) found an arrearage in unpaid child support in the amount of $11,596.90.[1] As indicated above, until late January of this year the defendant had failed utterly to comply with the court's order of March 20, 1995 that he submit "full financials", and he has yet to submit a "full accounting of expenses", as ordered. Therefore, in the absence of security the court has no confidence that its order of child support will be complied with.
At $285 a week the defendant's annual obligation for the support of his children will be $14,820. Over the course of the nine years before they reach their majority, payment of that amount would entail expenditures in the amount of $133,380. This exceeds the total amount of funds now being held by the defendant's Connecticut conservator. Accordingly, the court CT Page 3916 will require the defendant to deposit additional funds with his Connecticut conservator or post a bond for the excess funds needed to meet his continuing support obligations.
The plaintiff's counsel has requested an order of counsel fees in this case. Pursuant to § 46b-62 and considering the criteria in § 46b-82 of the General statutes, the court believes that such an award is appropriate. See Fricke v. Fricke,172 Conn. 602, 603-04 (1978). The defendant's overall financial position is considerably better than the plaintiff's, especially in view of the need for a payment of counsel fees in a lump sum.
By order dated February 26, 1996 the court requested to be advised whether or not the defendant's Connecticut conservator and/or the conservator's counsel is requesting that any fees for their services be paid from the funds being held by the former pursuant to the court's restraining order. Requests for payment of fees have been received from both. Those requests were not accompanied by the information requested by the court in paragraph 2d of its order of February 26 regarding the "source" of any prior payments. The court will defer action on requests for fees until the hearing ordered in paragraph 6 of the orders below.
In view of the foregoing the court enters the following orders:
1. The plaintiff's motion to reopen and modify the judgment of dissolution (#143) is denied.
2. The plaintiff's motion to modify child support (#150) is granted, and the defendant is ordered to pay to the plaintiff by way of child support $285 per week effective January 22, 1996, the date of the hearing in this matter. The defendant's Connecticut conservator is ordered to satisfy the defendant's obligation promptly each week out of the funds being held by him. The arrearage accrued from January 22, 1996 through the date of this memorandum, which the court computes to be $3,990, shall be paid within one week from receipt of the memorandum by the defendant's Connecticut conservator out of the funds presently being held by him pursuant to the court's restraining order.
3. As security for the defendant's payment of his child support obligation, the court orders that the funds presently CT Page 3917 being held by the defendant's Connecticut conservator remain reserved for the purpose of meeting the defendant's child support obligation, and that, within 30 days of the date of this decision, the defendant deposit $40,000 in his Connecticut conservator's account or, in lieu thereof, furnish a bond in the same amount, with surety satisfactory to the court, to secure the remainder of the funds payable as child support for the minor children of the defendant until they reach their 18th birthday. The funds presently on hand and the funds deposited pursuant to this court's order or the bond in lieu thereof shall continue to be held by the defendant's Connecticut conservator, and no payments may be made from those funds for any purpose other than the support of the two minor children without further order of this court. Those funds are to remain in the state of Connecticut as security for the defendant's payment of his child support obligations.
4. The plaintiff's motion for attorney's fees (#147) is granted, and the defendant's Connecticut conservator is ordered to pay directly to the plaintiff's attorney within 15 days of the date of this order the sum of $4,000 in counsel fees and $263.62 in reimbursement of expenses.
5. Neither the defendant nor anyone on his behalf, specifically including his Connecticut conservator, Attorney Donald McGill, may take any action in the Waterbury Probate Court or any other forum to terminate the existing conservator's appointment or take any action which would interfere in any way with the satisfaction of the court's order of child support out of the funds held by that conservator and any other funds deposited by the defendant pursuant to paragraph 3 hereof.
6. At 2:00 p.m. on May 15, 1996 the following persons are ordered to appear for a hearing before this court to show cause why sanctions should not be imposed for their failure to comply with the court's order of March 20, 1995 (Dranginis, J.) requiring notice to the plaintiff of any additional funds recovered by the defendant and requiring that those funds not be disbursed to the defendant without further order of the court: Attorney Donald W. McGill, Conservator of the Estate of the defendant, Milton Plaza; Attorney Richard J. Scappini, counsel for the estate of the defendant; Attorney Frederick P. Devine, Jr. The plaintiff's attorney shall also be present, and the attorneys named above shall be responsible for seeing that any other counsel or other necessary persons who have knowledge of CT Page 3918 this matter are present at that time.
SHORTALL, J.